FILED IN CLERK'S OFFICE
U.S.D.C. Gainesville
DSK
JUN 15 2004
LUTHER D. THOMAS, Clerk
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

JUSTICE COMETH, LTD., as trustee, EMERITUS, LTD., as trustee, M. SEGALL, and CHERYL B. LAMKINS,

Plaintiffs,

v.

HARRY B. WHITE, RICKEY YETMAN, JAMES V. LAMBERT, WYLENE LAMBERT, CARTERS LAKE ESTATES, INC., PATSY YETMAN, DONALD E. HOLLINGSWORTH, JOYCE S. HOLLINGSWORTH, STEVEN ZANE HOLLINGSWORTH, MARTIN H. KROLL, SR., THOMAS OPRANDI, WORTH ENTERPRISES, INC., CLIFFORD LANCEY, DAVID WATKINS, EDDIE WATKINS, WATKINS LUMBER & SUPPLY CO., and JANE DOE,

Defendants.

CIVIL ACTION NO. 2:2-CV-172-RWS

**ORDER**

Now before the Court is Defendants Wylene Lambert and James

286

Lambert's Motion to Dismiss [277-1]. The facts of this case are set forth in this Court's Order entered February 6, 2004 (hereinafter the "February 6 Order"). The sole remaining counts in this case are Counts I, IV, and VIII. Of these remaining counts, Counts IV and VIII are premised on diversity jurisdiction. Count I is a claim for violation of 11 U.S.C. § 362(h) the bankruptcy automatic stay provision. Plaintiffs M. Segall and Cheryl Lamkins assert that they are citizens of Florida and that Defendants are citizens of Georgia. Defendants Wylene Lambert and James Lambert have now moved to dismiss this case asserting that Plaintiffs are actually citizens of Georgia and jurisdiction is not proper in this Court.

**I. Diversity Jurisdiction**

Federal courts are of limited jurisdiction that "cannot be supplanted by considerations of convenience and efficiency." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000). "Once a federal court determines it is without jurisdiction, it is powerless to continue." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). Under 28 U.S.C. § 1332 the district court may exercise original jurisdiction where the amount in controversy exceeds $75,000 and the suit is between citizens of different states.



AO 72A
(Rev 8/82)

28 U.S.C. § 1332(a)(1).

In order for diversity jurisdiction to exist, there must be complete diversity, no party on one side may be a citizen of the same state as any party on the other side. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978); Mas v. Perry, 489 F.2d 1396, 1398-99 (5th Cir. 1974).[1] The diverse citizenship among the parties must be present at the time the complaint is filed. Mas, 489 F.2d at 1399. The burden of pleading diverse citizenship is upon the party invoking federal jurisdiction and if the diversity jurisdiction is properly challenged, that party also bears the burden of proof. Id.

A person is not necessarily a citizen of, or domiciled in, the state in which he resides at any given moment. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Mas, 489 F.2d at 1399 (internal quotation

---

[1]The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).



AO 72A
(Rev.8/82)

omitted). Domicile is determined by reference to two elements: (1) physical presence within a state; and (2) the mental intent to make a home there indefinitely. McDonald v. Equitable Life Ins. Co., 13 F. Supp. 2d 1279, 1280-81 (M.D. Ala. 1998); see Mas, 489 F.2d at 1399 (stating that change of domicile may only be effected by (a) taking up residence in a different domicile; with (b) the intent to remain there). An intention to remain there permanently is not required. Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990). Moreover, "a 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile." Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).

A court should consider both positive evidence and certain presumptions in order to determine a person's domicile. McDonald, 13 F. Supp. 2d at 1281; see Mitchell v. United States, 88 U.S. (21 Wall.) 350, 353, 22 L. Ed. 584 (1874). First among these presumptions is that the state in which a person resides at any given time is also that person's domicile. Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003). Second, a court may presume that once an individual has established a domicile, he remains a citizen there until he satisfies the mental and physical



AO 72A
(Rev.8/82)

requirements of domicile in a new state. Id. Finally, while these presumptions may be useful, they cannot override the actual facts of the case and the court should look to the individual's entire course of conduct to determine domicile for the purpose of diversity jurisdiction. McDonald, 13 F. Supp. 2d at 1281.

Facts that courts consider in determining whether domicile has been established include but are not limited to:

> location of employment; home ownership and ownership of other real property; location of one's household furnishings; registration and title to one's automobiles; driver's licensing; voter registration; payment for utilities; banking; acquiring a telephone number and listing it; receiving mail; and establishing membership in local professional, civic, religious, or social organizations.

Audi, 273 F. Supp. 2d at 1226. No single factor is conclusive, however, and the court will look to the totality of the evidence. McDonald, 13 F. Supp. 2d at 1281. An individual's statements of intent may also be considered, but when they conflict with established facts they will be accorded little weight. Id.

Plaintiffs' complaint asserts that all Plaintiffs are citizens of the state of Florida. Rule 12(b)(1) attacks on subject matter jurisdiction can come in two forms. "Facial attacks" require the court to evaluate the complaint to see

whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; the allegations are taken as true for purposes of the motion. Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.1990). "Factual attacks" challenge subject matter jurisdiction in fact, irrespective of the pleadings. Garcia, 104 F.3d at 1261.

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Id. (quoting Lawrence, 919 F.2d at 1529). In this case the attack is factual so the Court will evaluate for itself whether jurisdiction is proper. The evidence before the Court consists of representations by the parties in the deposition testimony of Plaintiffs Lamkins and Segall. Additionally, in response to the Motion to Dismiss, Lamkins and Segall each filed affidavits asserting that they are citizens of the State of Florida.



AO 72A
(Rev.8/82)

A. **Cheryl Lamkins**

Based on the evidence before the Court, Ms. Lamkins is deemed to be a citizen of the state of Georgia. The record reflects that Ms. Lamkins owns real property at 126 Scott Drive, in Gilmer County, Georgia. (Lamkins Dep. Vol. 1 at 39.) She is also owner of additional property in that same subdivision, Carter Lake Estates. (Id. at 40.) Ms. Lamkins has resided at 126 Scott Drive since sometime in 1994 or 1995, (Id. at 101) and has paid taxes on that property at the Gilmer County tax assessor's office. (Id. at 72.) Ms. Lamkins also maintains a bank account in Gilmer County, Georgia at Community Bank. (Id. at 72-73), has held a post office box in Oakman, Georgia for the past nine years, (Lamkins Dep. Vol. 2 at 231), and previously had a cellular phone number with an Atlanta exchange, (Lamkins Dep. Vol. 1 at 127). Accordingly, it seems clear that Ms. Lamkins has satisfied that first prong of the test for domicile– physical presence in Georgia. Ms. Lamkins owns real property in Georgia where she has resided for the past nine or ten years. See Audi, 273 F. Supp. 2d at 1226 (a person is presumed to be domiciled in the state where she resides). She pays taxes in Georgia and conducts many of the affairs of her daily life in Georgia.



AO 72A
(Rev.8/82)

Ms. Lamkins, contends, however, that she resides at 6940 Golden Gate Parkway in Florida (Id. at 10) in a rental house that she rents from her brother, who also resides there. (Id. at 22.) She also states that she lives from time to time on a boat that is registered in Florida. (Id. at 25.) Regarding her residence at the address in Gilmer County, Georgia, Ms. Lamkins asserts that she solely resides there in order to protect her interest in the property at Carter Lake Estates subdivision which is the same property which is the subject of the present dispute. (See Pls.' Resp. to Mot. to Dismiss [282] Lamkins Aff. (hereinafter "Lamkins Aff.") ¶ 3.)

The second prong of the test for domicile requires an individual to have the mental intent to stay indefinitely. McDonald, 13 F. Supp. 2d at 1280-81. Although Ms. Lamkins states that she does have the present intention to return to Florida (Lamkins Dep. Vol. 1 at 235) she does not know when she intends to return to Florida. (Id. at 248.) It appears, therefore, that Ms. Lamkins intends to stay in Georgia indefinitely.[2] See Yeldell, 913 F.2d at 537 (intention to stay permanently not required to establish domicile). Ms. Lamkins "floating

[2] While Ms. Lamkins states in her deposition that she is required to stay in Georgia to protect her property interests, she does not state that upon the conclusion of the dispute that she has plans to return to Florida.

intention" to return to Florida does not prevent the acquisition of domicile in Georgia. See Crowley, 710 F.2d at 678.

Finally, Ms. Lamkins affidavit, filed in response to the motion to dismiss consists of numerous, unsupported and self-serving statements purporting to prove that she is a citizen of Florida. She states that she has been a citizen of Florida for the past 22 years, holds a Florida driver's license and is a registered voter in Florida, among other things. "However, like other self-serving declarations, such statements may lack persuasiveness or be negated by other declarations or inconsistent acts." Audi, 273 F. Supp. 2d at 1227. During Ms. Lamkins' deposition she stated that she did not know the number of her Florida driver's license, and that while she was registered to vote, the last time she did so was two years ago. (Lamkins Dep. Vol. 1 at 11-12.) Moreover, not only is Ms. Lamkins' affidavit full of merely conclusory assertions devoid of specific facts, it is completely unsupported by any evidence.[3]

Finally, Ms. Lamkins' statements of intent are further contradicted by her

---

[3]For instance, Ms. Lamkins affidavit states that she "has maintained banking affairs in Florida" without identifying any specific banks, accounts or supporting statements. She states that she maintains phone number in Florida without listing any, and that she maintains Florida license tags without providing details or supporting evidence of such.

statements and actions in filing for bankruptcy in the Northern District of Georgia. The record reflects that Ms. Lamkins filed for bankruptcy in the Rome Division of the Northern District of Georgia on June 4, 2002, (See Lamkins Dep. Vol. 2 at 205-206, Lamkins Dep. Ex. 43) wherein she represented that she had been domiciled or had a residence , principal place of business or principal asset in that District for the immediate past 180 days preceding the date of the petition.[4] The complaint was filed in this case on October 16, 2002. Ms. Lamkins' assertions of intent to be a citizen of Florida are contradicted by her own representations and actions. Nothing in the record supports a finding that Ms. Lamkins was a citizen of the State of Florida at the time when the Complaint was filed, and Ms. Lamkins has failed to carry the burden to demonstrate that jurisdiction in this Court is proper.

**B. M. Segall**

Although the lack of diversity of Ms. Lamkins alone is sufficient to divest this Court of jurisdiction, the Court will briefly address the domicile of Mr. Segall. See Owen Equip., 437 U.S. at 373 (requiring complete diversity);

---

[4]Ms. Lamkins again filed for bankruptcy in the Northern District of Georgia on August 4, 2003. (See Bankruptcy Petition No. 03-50977-mgd.)



AO 72A
(Rev.8/82)

Mas v. Perry, 489 F.2d 1396, 1398-99 (5th Cir. 1974). The record reflects that Mr. Segall maintains a bank account at Community United Bank in Ellijay, Georgia, (Segall Dep. at 93), and receives mail at a post office box in Oakman, Georgia. (Id. at 142.) Mr. Segall has not been employed since 1984 and lives off of money borrowed from the Community Bank in Ellijay. (Id. at 179.) It appears that Mr. Segall spends his days building a house on the property in Carters Lake Estates in Gilmer County, Georgia and litigating this case. (Id. at 151.)

As to his connection with Florida, Mr. Segall asserts that he owns boats in Florida which are registered in Florida, and is domiciled where ever his boat is located. ( Id. at 85.) He does not recall, however, the last time he was on his boat (Id. at 21), or even where exactly the boat is docked. (Id. at 27, 86.) Mr. Segall does not own any real property in Florida, (Id. at 101), and does not recall paying rent in Florida for the past three years. (Id. at 90.) Mr. Segall does not pay for utilities in Florida. (Id. at 196.) Furthermore, although he claims he has a Florida driver's license and that his car is registered in Florida, he does not recall the last time he renewed his license nor does he recall in whose name the car is registered. (Id. at 102.)



AO 72A
(Rev.8/82)

Like Ms. Lamkins, Mr. Segall has filed a affidavit stating that he is a domiciliary of Florida, that he intends Florida to be his domicile. Mr. Segall, has not, however, presented any evidence to support his contentions. Notably, Mr. Segall's conclusory assertions presented in his affidavit are contrary to the responses he gave in sworn testimony at his deposition.[5] Moreover, Mr. Segall's assertions are wholly unsupported and there is no evidence to suggest that at the time of the filing of the present suit he was a citizen of the State of Florida. Finally, as the party who carries the burden of proof on establishing the jurisdiction of this Court, Mr. Segall's evasive deposition responses and self-serving declaration do not carry this burden. This Court does not have jurisdiction over Plaintiff's claims in Counts IV and VIII. Accordingly, Counts IV and VIII are hereby **DISMISSED**.

## II. Jurisdiction over Bankruptcy Claim

The only remaining count is by Plaintiff Lamkins' in Count I which alleges that Defendants violated the bankruptcy automatic stay when they

---

[5]For instance, Mr. Segall states that he has maintained and attended social, athletic, and religious and other related activities an functions in Florida. (Segall Aff. ¶ 1(j).) By contrast, during his deposition he stated that he was not affiliated with these type organizations. (Segall Dep. at 88.)



AO 72A
(Rev.8/82)

attempted to foreclose on her property on June 4, 2002. The record reflects that on June 4, 2002, the same day as the foreclosure sale, Ms. Lamkins filed for bankruptcy in the Rome Division of the Northern District of Georgia.

The Court holds that Ms. Lamkins' claim should be dismissed because this Court does not have jurisdiction to hear her claim for violation of the automatic stay and that jurisdiction for that claim lies exclusively with the bankruptcy court. See E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117 (2d Cir. 2001) (stating that claim for violation of automatic stay must be brought in bankruptcy court rather than district court which only has appellate jurisdiction over bankruptcy cases); Pereira v. First N. Am. Nat'l Bank, 223 B.R. 28, 31 (N.D. Ga. 1998); In re Lickman, 297 B.R. 162, 188-89 (Bankr. M.D. Fla. 2003) ("The bankruptcy court has exclusive jurisdiction to impose sanctions for violation of the automatic stay."); In re Benalcazar, 283 B.R. 514, 522 (Bankr. N.D. Ill. 2002) ("It is generally accepted that only the bankruptcy court has authority to punish parties for violating the automatic stay.")

In Eastern Equipment, the Second Circuit Court of Appeals held that a claim for willful violation of an automatic stay must be brought in the



AO 72A
(Rev.8/82)

bankruptcy court. 236 F.3d at 121. In that case the plaintiff and Chapter 7 debtors asserted that their Complaint stated a federal claim under 11 U.S.C. § 327(h) for violation of the bankruptcy automatic stay. Id. The Second Circuit held that the district court did not have jurisdiction and noted that the plaintiff was not without a remedy because they could move to reopen their original bankruptcy proceeding to bring the claim. Id.[6] Likewise, this Court does not have jurisdiction to hear Plaintiff Lamkins' claim for violation of the bankruptcy automatic stay. Moreover, Ms. Lamkins may bring her claim in the bankruptcy court. Accordingly, Count I is hereby **DISMISSED**.

**Conclusion**

Defendants Wylene Lambert and James Lambert's Motion to Dismiss [277-1] is hereby **GRANTED**. The sole remaining claims in this case, including Counts I, IV, and VIII are hereby **DISMISSED for lack of jurisdiction.** All other remaining motions are hereby **DENIED as moot.**[7] The Clerk is **DIRECTED** to administratively terminate this case.

---

[6]The court also held that the federal bankruptcy code preempts any state law claims for violation of the automatic stay. Id.

[7]The remaining motions include docket numbers:161, 163, 164, 171, 172, 173, 243, 246, 250, 255, 262, 263, 266, 269, 271, 272, 283.



AO 72A
(Rev.8/82)

**SO ORDERED** this 15th day of June, 2004.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE